FILED

2005 NOV 30 P 2: 28

CLERK, US DIST COURT
EASTERN DIST OF CALIF
BY____

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. CIV-F-96-5720 AWI SMS |
| ) | |
| Plaintiff, ) | ORDER OF |
| ) | JUDICIAL SALE |
| v. ) | |
| ) | |
| RODGER L. McAFEE, et al., ) | |
| ) | |
| Defendants. ) | |

  The United States of America having filed a Motion for Order of Judicial Sale in this action, on April 4, 2005, with supporting pleadings, and the parties having been heard on this motion;

  A final judgment having been entered by this Court on October 4, 2000 in this action, ordering that the United States be granted summary judgment on its entire complaint for judicial foreclosure of the subject real property, described below; and

  This Court's final judgment having been affirmed by the Court of Appeals for the Ninth Circuit, by Order entered August 13, 2002;

IT IS ORDERED THAT:

1. This action was brought by the United States to foreclose upon real estate deeds of trust and chattel security interests, including with respect to real property located in Merced County, California, as more particularly described at Exhibit A to this Order.

2. The real property described in paragraph 1, above, and all the improvements, buildings, and fixtures on it, are referred to hereinafter as "the Realty".

3. The United States Marshal for the Eastern District of California, or his representative, is authorized and directed under 28 U.S.C. §§ 2001 and 2002 to offer for public sale and to sell the Realty. This judgment shall act as a special writ of execution and no further orders or process from the Court shall be required. The United States Marshal is specifically directed to commence, within a reasonable time after the date of filing of this order, the notice procedure set forth below and to sell the Realty without further order of the Court, save only for confirmation by the Court after the completed sale.

4. The United States Marshal or his representative is authorized to have free access to the Realty and to take all actions necessary to preserve the Realty, including without limitation retaining a locksmith or other person to change or install locks or other security devices on any part of the realty, until the deed to the Realty is delivered to the ultimate purchaser.

5. The sale shall be free and clear of the interests of defendants Rodger L. McAfee, Darlene M. McAfee aka Darlene Madeleine McAfee aka Darlene M. Blackwood, and Rodger L. McAfee acting as the Administrator of Estate of May E. McAfee (collectively "McAfee defendants").

6. The sale shall be subject to all laws, ordinances, and governmental regulations (including building and zoning ordinances), affecting the premises, and easements and restrictions of record, if any.

7. The public sale of the Realty shall be held either at the courthouse of the county in which the Realty is located, or on the premises of the Realty.

8. The date and time for sale are to be announced by the United States Marshal or his representative.

9. Notice of the sale shall be published once a week for at least four (4) consecutive weeks before the sale in at least one newspaper regularly issued and of general circulation in the county, state, or judicial district of the United States where the Realty is situated and, at the discretion of the United States Marshal or his representative, by any other notice that he or his representative deems appropriate. The notice shall contain a description of the Realty and shall contain the essential terms and conditions of sale in this judgment and decree.

10. A reasonable minimum bid shall be determined by the United States. If the minimum bid is not met or exceeded, the Marshal or his representative may, without further permission of this Court, and under the terms and conditions in this order of sale, hold a new public sale, if necessary, and reduce the minimum bid. The Realty may be sold piecemeal if deemed to be in the best interests of the United States.

11. The successful bidder shall be required to deposit at the time of sale with the United States Marshal or his representative a minimum bid of ten (10) percent of his or her bid, with the deposit to be made by certified check or cash. Before being permitted to bid at the sale, bidders shall display to the United States Marshal, or his representative, proof that they are able to comply with this requirement. No bids will be received from any person who has not presented proof that, if they are the successful bidder, they can make the deposit required by this judgment.

12. The United States, through the Farm Service Agency or the U.S. Department of Agriculture, may bid as a credit against its judgment without tender of cash. The United States may submit its bid in writing to the U.S. Marshal in advance of the public sale, or may bid at the public sale.

13. The balance of the purchase price for the Realty is to be paid to the United States Marshal within sixty (60) days after the date the bid is accepted, by a certified or cashier's check payable to the United States Marshal for the Eastern District of California. If the bidder fails to fulfill this requirement, the deposit shall be forfeited and shall be applied to cover the expenses of the sale, including commissions due under 28 U.S.C. § 1921(c), with any amount remaining to be returned to the bidder, and the Realty shall be again offered for sale under the terms and

conditions of the judgment and decree.

14. The sale of the Realty shall be subject to confirmation by this Court under the terms of Rule A-570 of the United States District Court for the Eastern District of California. Absent a written objection filed within three days of the sale, or the purchaser's default, the sale shall stand confirmed without any action by the Court. On confirmation of the sale of the Realty and receipt of payment in full, the United States Marshal shall execute and deliver a quit claim deed conveying the Realty to the purchaser. On confirmation of the sale, all interests in, liens against, or claims to, the Realty that are held or asserted by the plaintiff or any of the defendants in this action are discharged.

15. The sale is ordered pursuant to 28 U.S.C. § 2001, and is made without right of redemption.

16. Until the Realty is sold, the McAfee defendants shall take all reasonable steps necessary to preserve the Realty (including all buildings, improvements, and fixtures on the Realty) in its current condition including, without limitation, maintaining fire and casualty insurance policies on the realty. The McAfee defendants shall not commit waste against the Realty, nor shall they cause or permit anyone else to do so. The McAfee defendants shall not do anything that tends to reduce the value or marketability of the Realty, nor shall they cause or permit anyone else to do so. The McAfee defendants, and all other defendants, shall not record any instruments, publish any notice, or take any other action (such as running newspaper advertisements) that may directly or indirectly tend to adversely affect the value of the Realty or that may tend to deter or discourage potential bidders from participating in the public auction.

17. The McAfee defendants and all other defendants, and any other persons occupying the Realty shall leave and vacate the Realty permanently (unless the United States agrees otherwise in writing), within 90 days of the date of this Order, each taking with them their personal property (but leaving all improvements, buildings, fixtures, and appurtenances to the Realty). If any person occupying the Realty fails or refuses to leave and vacate the Realty by the time specified in this Order, the U.S. Marshal and his deputies are authorized and directed to take all actions that are reasonably necessary to bring about the ejectment of those persons. If any

person fails or refuses to remove his or her personal property from the Realty by the time specified herein, the property remaining on the Realty thereafter is deemed forfeited and abandoned, and the Marshal and his deputies are authorized to remove it and dispose of it in any manner the Marshal sees fit, including sale, in which case the proceeds of the sale are to be applied first to the expenses of sale, and then to satisfy the judgment in this case.

      18.    After the sale is confirmed by the Court, the United States Marshal shall distribute the amount paid by the purchaser as follows:

          i.    First, the U.S. Marshal shall retain an amount sufficient to cover the expenses of the sale, including the commissions due under 28 U.S.C. § 1921(c) and including an amount sufficient to cover the expenses of any steps taken to secure or maintain the Realty pending sale and confirmation by the Court;

          ii.    Second, to all taxes unpaid and matured, since the date of the final judgment in this action on October 4, 2000, that are owed to Merced County for real property taxes on the property;

          iii.    Third, to the United States of America to satisfy the judgment in this case, up to the amount of $5,925,784.01 plus interest accrued at the rate of $449.9924 per day from February 23, 2005 through the date of sale of the Realty.

Any balance remaining after the above payments shall be held by the Clerk pending further order of the Court.

IT IS SO ORDERED.

Dated: 11-29-05

HON. ANTHONY W. ISHII
UNITED STATES DISTRICT JUDGE

**EXHIBIT A**

All that real property in the County of Merced, State of California, described as follows:

PARCEL 1:

The North one-half of Blocks 4 and 5, according to map entitled, "MAP OF SUBDIVISION NO. 5 OF THE CHOWCHILLA RANCH MERCED AND MADERA COUNTIES, CALIFORNIA" filed September 11, 1912 in Book 5 of Official Plats, at page 30, Merced County Records.

ALSO that portion of the northwest 1/4 of the northwest 1/4 of the Southwest 1/4 and that portion of the northeast 1/4 of the northeast 1/4 of the southeast 1/4 of said Block 5 described as follows:

A)   Beginning at the west 1/4 corner of said Block 5; thence South 0°23' east 180.55 feet; thence North 32°22'30" East 214.84 feet to a point on the north line of the south 1/2 of said Block 5 that is north 89°42' east 116:72 feet from the west 1/4 corner thereof; thence South 89°42' West 116.72 feet to the point of beginning.

B)   Beginning at the east 1/4 corner of said Block 5; thence South 0°45'30" East 55.31 feet; thence North 72°14'30" West 137.67 feet to a point on the north line of the south 1/2 of said Block 5; thence east along said north line to the point of beginning.

EXCEPTING THEREFROM the property and property rights excepted in the deed recorded August 7, 1944 in Book 781 of Official Records, page 479 and by deed recorded November 1, 1955 in Book 1230 of Official Records, page 515.

PARCEL 2:

All of Blocks 6 & 7 according to map entitled, "MAP OF SUBDIVISION NO. 5 OF THE CHOWCHILLA RANCH MERCED AND MADERA COUNTIES" recorded September 11, 1912 in Book 5 of Maps, page 30, Merced County Records.

EXCEPTING THEREFROM that portion of the southeast quarter of said Block 6 lying within the following described tract:

Beginning at the 4" x 4" redwood post at the southeast corner of said Block 6; thence South 89°32' West 43.35 feet along the south line of said Block 6, to a 3" x 4" redwood post; thence North 0°23' West 2475.82 feet to a point that is South 0°23' East 180.55 feet from the concrete monument at the quarter corner between said Block 5 and Block 6; thence North 32°22'30" East 214.84 feet to a point that is North 89°42' East 116.72 feet from the concrete monument at the quarter corner between said Block 5, and Block 6; thence North 89°42' East 2542.75 feet to the 3" x 4" redwood post on the east line of the southwest quarter of said Block 5; thence South 0°53'30" East 2648.82 feet along the east line of the southwest quarter of said Block 5 to the 3" x 4" redwood post at the south quarter corner thereof that is South 89°32' West 2639.40 feet from the 3" x 4" redwood post at the southeast corner of said Block 5; thence south 89°32' West 2639.40 feet along the south line of said Block 5 to the place of beginning.

ALSO EXCEPTING THEREFROM the property right reserved in the deeds recorded in Book 781 of Official Records, page 479 and in Book 1230 of Official Records, page 515 and as modified by Quitclaim deeds recorded May 5, 1976 in Vol. 2029 of Official Records, Page 758, and 760, Merced County Records. (9307-76 and 9308-76)

ALSO EXCEPTING THEREFROM all that portion of said Blocks 6 and 7 lying Southerly and Westerly of the Easterly line of the following described parcel.

Beginning at a 3/4 inch iron pipe with brass plug marked LSJ-31 from which the northwest corner of said Block 7 bears North 87°06'43" West 1510.99 feet, said point having coordinates Y-223,243.01 and X-1,982,880.63; thence from said point of beginning south 38°45'35" East 902.57 feet to a 3/4 inch iron pipe with brass plug marked LSJ-33; thence South 41°38'01" East 1845.52 feet to a 3/4 inch iron pipe with brass plug marked LSJ-35; thence North 48°21'59" East 8.00 feet to a 3/4 inch iron pipe with brass plug marked LSJ-37; thence South 41°38'01" East 100.00 feet to a 3/4 inch iron pipe with brass plug marked LSJ-39; thence South 48°21'59" West 8.00 feet to a 3/4 inch iron pipe with brass plug marked LSJ-41; thence South 41°38'01" East, 56.45 feet to a 3/4 inch iron pipe with brass plug marked LSJ-41A; thence South 33°46'34" East 3136.01 feet to a 3/4 inch iron pipe with brass plug marked LSJ-43; thence South 40°53'32" East 773.03 feet to a 3/4 inch iron pipe with brass plug marked LSJ-45 from which the southeast corner of said Block 7 bears South 85°47'56" West 514.98 feet; thence South 78°06'31" East 154.83 feet to a 3/4 inch iron pipe with brass plug marked LSJ-47; thence South 40.00 feet to a 3/4 inch iron pipe with brass plug marked LSJ-49; thence South 64°28'24" West 69.96 feet to a 3/4 inch iron pipe with brass plug marked LSJ-51; thence South 40°53'32" East 1800.00 feet to a 3/4 inch iron pipe with brass plug marked LSJ-53; thence North 49°06'28" East 8.00 feet to a 3/4 inch iron pipe with brass plug marked LSJ-55; thence South 40°53'32" East 100.00 feet to a 3/4 inch iron pipe with brass plug marked LSJ-57; thence South 49°06'28" West 8.00 feet to a 3/4 inch iron pipe with brass plug marked LSJ-59; thence South 40°53'32" East 2583.46 feet to a 3/4 inch iron pipe with brass plug marked LSJ-41; thence South 40°54'47" East 718.52 feet to a 3/4 inch iron pipe with brass plug marked LSJ-63; thence South 74°16'40" East 219.39 feet to a 3/4 inch iron pipe with brass plug marked LSJ-65; thence South 00°10'50" West 35.00 feet to the south line of the lands of Martha B. Kesterson, et al; thence along said south line North 89°49'10" West 1553.46 feet; thence leaving said South line North 00°10'50" East 35.00 feet to a 3/4 inch iron pipe with brass plug marked LSJ-34; thence North 47°26'59" East 74.72 feet to a 3/4 inch iron pipe with brass plug marked LSJ-32; thence North 40°53'25" West 2440.00 feet to a 3/4 inch iron pipe with brass plug marked LSJ-30; thence South 49°06'35" West 8.00 feet to a 3/4 inch iron pipe with brass plug marked LSJ-28; thence North 40°53'25" West 100.00 feet to a 3/4 inch iron pipe with brass plug marked LSJ-26; thence North 49°06'35" East 8.00 feet to a 3/4 inch iron pipe with brass plug marked LSJ-24; thence North 40°53'25" West 2675.00 feet to a 3/4 inch iron pipe with brass plug marked LSJ-22; thence North 79°50'35" West 168.02 feet to a 3/4 inch iron pipe with brass plug marked LSJ-20; thence North 40.00 feet to a 3/4 inch iron pipe with brass plug marked LSJ-18 from which the

Southeast corner of said Block 7 bears South 89°14'20" East 858.92 feet; thence North 74°33'58" East 92.16 feet to a 3/4 inch iron pipe with brass plug marked LSJ-16; thence North 38°46'19" West 3105.00 feet to a 3/4 inch iron pipe with brass plug marked LSJ-14; thence South 51°13'41" West 8.00 feet to a 3/4 inch iron pipe with brass plug marked LSJ-12; thence North 38°46'19" West 100.00 feet to a 3/4 inch iron pipe with brass plug marked LSJ-10; thence North 51°13'41" East 8.00 feet to a 3/4 inch iron pipe with brass plug marked LSJ-8; thence North 38°46'19" West 3223.26 feet to a 3/4 inch iron pipe with brass plug marked LSJ-6; thence South 51°13'41" West 4.00 feet to a 3/4 inch iron pipe with brass plug marked LSJ-4; thence from a tangent which bears North 38°46'19" West, along a curve to the left having a radius of 690.05 feet, through a central angle of 51°08'49" an arc distance of 616.00 feet to a 3/4 inch iron pipe with brass plug marked LSJ-2; that bears from the beginning of said curve North 64°20'43" West 595.74 feet; thence North 89°55'08" West 25.04 feet to the west line of said Block 7; thence along said West line North 00°04'52" East 10.00 feet, to the south right of way line of West Washington Road; thence along said South right of way South 89°55'08" East 1572.79 feet; thence leaving said South right of way line south 55°24'51" West 77.35 feet to the point of beginning.

ALSO EXCEPTING from Parcels 1 and 2, the property and property rights excepted in deed recorded March 19, 1974 in Vol. 1953 of Official Records, page 268, Merced County Records.

ALSO EXCEPTING THEREFROM all that portion of the Northeast quarter of Block 6, according to map, "MAP OF SUBDIVISION NO. 5 OF THE CHOWCHILLA RANCH MERCED AND MADERA COUNTIES CALIFORNIA", recorded September 11, 1912 in Book 5 of Official Plats, page 30, Merced County Records, described as follows:

BEGINNING at the Northeast corner of said block 6, thence South 0°44' East 294.90 feet along the East line of said Block 6; thence South 89°48' West 589.80 feet parallel with the North line of said Block 6; thence North 0°44' West 294.90 feet to a point on the North line of said Block 6; thence North 89°48' East 589.80 feet along said North line to the point of beginning.

PARCEL 3:

All that portion of the Northeast quarter of Block 6, according to map, "MAP OF SUBDIVISION NO. 5 OF THE CHOWCHILLA RANCH MERCED AND MADERA COUNTIES CALIFORNIA", recorded September 11, 1912 in Book 5 of Official Plats, page 30, Merced County Records, described as follows:

BEGINNING at the Northeast corner of said block 6, thence South 0°44' East 294.90 feet along the East line of said Block 6; thence South 89°48' West 589.80 feet parallel with the North line of said Block 6; thence North 0°44' West 294.90 feet to a point on the North line of said Block 6; thence North 89°48' East 589.80 feet along said North line to the point of beginning.

EXCEPTING THEREFROM the property and property rights excepted in the deed recorded August 7, 1944 in Vol. 781 of Official Records, page 479 and by deed recorded November 1, 1955 in Book 1230 of Official Records, page 515, Merced County Records.

ALSO EXCEPTING THEREFROM the property and property rights excepted in deed recorded March 19, 1974 in Vol. 1953 of Official Records, page 268, Merced County Records.